Joseph Aukopovicz et al., Appellants, v. L. H. Heymann, et al., Appellees.

Gen. No. 40,477.

 Opinion

filed April 26, 1939.

SHULMAN, SHULMAN & ABRAMS and MORRIS BROMBERG, all of Chicago, for appellants; MEYER ABRAMS, of counsel.

WILLIAM C. BAUSCH, of Chicago, for certain appellees.

JOHN M. LEE and CARL M. LOOS, both of Chicago, for certain other appellees.

EARL V. BROWN, of Chicago, for certain other appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This was a bill in equity by a group of bondholders against the individual members of a bondholders' protective committee of bonds sold by the West Side Trust & Savings Bank seeking relief to remove the members of the committee and their agents for malfeasance, misfeasance, accounting, and other relief. The several defendants filed their motions to strike and to dismiss which were sustained by the court, with leave to amend. An amended complaint was filed to which motions to dismiss were again filed and sustained. Plaintiffs elected to stand by the amended complaint which was then dismissed for want of equity. Thereupon the plaintiffs appealed.

The plaintiffs suggest to the court that the first 10 allegations of the complaint stated in general terms, without detail, the nature of the cause of action. The details as to each particular property were set forth

in the eleventh paragraph. It was alleged: (1) That plaintiffs were investors in "gold bonds" purchased from the West Side Trust & Savings Bank (the issuing house, and trustee of each of the issues), which bank was in business until August, 1933, when it was closed by the auditor of public accounts; (2) the principal defendants, Heymann, Morris and Isaacs, were financially interested as officers and directors of the bank and in charge of its management; (3) during the bank's existence many defaults occurred, and in order to continue the sale of the bonds the bank concealed the defaults by advancing its funds on defaulted bonds and coupons until September 30, 1931; (4) that the principal defendants styled themselves as the protective committee under an agreement of September 30, 1931; (5) they urged the investors to deposit their bonds on representations that the committee was organized to protect their interests; that the bank, as trustee in possession, would collect the income for the benefit of the investors and would pay all of the expenses of the committee and cost of reorganization; (6) relying thereon the bonds were deposited by the ·plaintiffs and others; (7) from the date of the creation of the committee for a period of two years while the bank was open no reorganization was effected. During those years the committee permitted the diversion of the funds from the income for the personal benefit of their bank; (8) after the closing of the bank up to the early part of 1937 there was a controversy between the receiver and the committee for the right to appoint successor trustees and to control the properties. This was compromised in the middle of the year 1937 when the division of the spoil was agreed upon between the committee and the receiver; (9) no reorganization was effected of any property when the complaint was filed and not one cent was disbursed to depositing bondholders; (10) plaintiffs discovered the real purpose

of the committee was to protect the bank on its defaulted bonds and coupons in the amount of approximately $3,000,000 to enable the bank to place these bonds which should have been subordinated by law on equal parity with that of the investors and to enable it to apply the income on defaulted bonds and coupons.

It was further alleged (11) that since the creation of the committee many foreclosures were instituted resulting in decrees placing the defaulted bonds of the bank on equal parity and the use of the defaulted bonds in lieu of cash in purchasing the property. Nondepositors were frozen out and while the properties were acquired for the benefit of depositing bondholders no reorganizations were ever effected. The committee failed to take charge of the properties and permitted the application of the income for the benefit of the bank. In other instances sales were held, and the committee failed to bid and permitted the bondholders to be frozen out without giving them the opportunity to protect their interests.

The details as to each bond issue were set forth giving the name of each issue, the amount, the number of the defaulted bonds owned by the bank, the date of the acquisition thereof, the entry of the decree placing the bonds on a parity, the sale and its results.

It was further alleged that a bond issue in the amount of $105,000 was floated by the bank on the Cullom Apartments. A default was made in the payment of the first instalment of $4,000 on November 17, 1929. This default was concealed from the investors. Another default in the payment of $4,000 was also made in the following year and concealed from the investors. The semiannual interest payments which were due in May and November of the year 1930 were likewise defaulted and concealed from the investors. In each instance the bank cashed the bonds and cou-

pons on and after maturity and held them uncanceled. Additional bonds were likewise acquired, making a total of principal bonds in the aggregate sum of $22,000 besides the interest coupons. These bonds and coupons acquired on and after maturity were declared to be on equal parity with the bonds of the investors in the decree of foreclosure, which foreclosure was instituted at the request of the committee by the bank, which was the owner of the defaulted bonds and coupons and which held out to the court that it was the qualified representative of the bondholders and its interest was not in conflict with theirs. The committee which promised to protect the interest of the investors used all these bonds in lieu of cash when it purchased the property at the master's sale in the name of its nominee. A loss to all investors was thereby caused by the direct action of the committee to the extent of $22,000 in principal and of the interest coupons which were by law subordinated or paid and which was used as cash in the purchase of the property and in the distribution to the nondepositors.

In connection with the Cullom Apartments when the nondepositors presented their bonds for collection the 10 per cent was not available to them.

A similar state of facts identical in each feature, except as to the amount, was set forth in the bill pertaining to the Fantha Apartments and to the Minisbee Apartments.

It is charged that in regard to the Parkway Apartments the committee informed the bondholders on March 15, 1932, that the trustee entered into possession for their benefit and that the committee acquired title, having paid therefor $1,000. The bank had acquired many bonds and coupons on and after default and such bonds and coupons were commingled with the other bonds of the depositors. Of the total outstanding bonds of $48,000 the committee had on deposit

$45,000. The committee permitted the application of the income collected by the trustee while in possession for reimbursement to the bank on its defaulted bonds and coupons of the January, 1932, maturity. The income of the property was also used to acquire the equity of redemption. The committee now entered into a deal to sell the deposited bonds, the equity of redemption, and further, the resignation of its appointed trustee and the plaintiff in the case to a purchaser, and the depositors were informed that they must accept the proceeds of the sale or execute a release for all torts and frauds if they desired to withdraw their bonds. This committee, which had $45,000 of the $48,000 outstanding bonds on deposit now claims to have in its possession only $4,500 of the bonds.

It is further charged that the committee permitted the withdrawal of the bonds and thereby it enabled the receiver of the bank to collect on equal parity with the other depositors on the basis of sale price. In stating the value of the property it figured all of the bonds and coupons on equal parity and deducted the item of $1,406.60 for reimbursements to the receiver for purchasing the equity of redemption.

On the Phylis-Ruth Apartments the bank entered into possession on November 7, 1931. The income was applied in reimbursement for defaulted bonds and coupons of July, 1931 maturity. This diversion of the funds was done while the property remained in default for the 1928, 1929 and 1930 taxes and penalties accrued thereon.

The complaint charged that similar deals were made by the committee and the receiver in connection with many of the other properties involved, and unless the defendants will be restrained from carrying out their aforesaid scheme, the interest of the beneficiaries will be greatly and irreparably damaged, and they will suffer and sustain irreparable loss: The committee

and the receiver who acquired the equity of redemption with the funds derived from the income of the premises and who placed the title in the name of the Liberty National Bank of Chicago were and are trustees for the beneficiaries, and the transfer of the title was a breach of trust for which they should be held liable.

The complaint further charged that this protective committee which undertook to protect the rights and interests of the bondholders was in duty bound to press every claim against the receiver of the bank to return the moneys illegally applied from the income of the property in payment of the defaulted bonds and coupons and to subordinate the bonds of the receiver to those of the depositors, but instead of protecting the interests of the investors it is coercing them to release the receiver of the bank and to enable the receiver to collect on all of the bonds owned by the bank on an equal parity with those of the depositors; that while it is the duty of E. R. Burnett, as successor trustee to protect the estate, he is merely acting as the tool of the committee and tenders resignations whenever requested by the committee in order to carry out the foregoing scheme, and it is unfair and inequitable to permit the said Burnett to remain as trustee and if a competent trustee would be appointed he would equitably and fairly represent the interests of the investors and protect their rights and remedies.

One of the important features of this case is the execution on September 30, 1931, by the principal defendants of an agreement called "Deposit Agreement," to the effect that on or about September 30, 1931 the principal defendants, three of the original members of the committee, namely, L. H. Heymann, Nelson Morris and Henry Isaacs, who were financially interested in the bank as stockholders, officers and directors, formed themselves into an alleged bondholders' committee for

the protection of the bondholders under an agreement called "Deposit Agreement" dated September 30, 1931.

It further appears that simultaneously with the formation of the committee, a letter was sent to the bondholders soliciting them to deposit their bonds in the bank as depositary, which letter was addressed to each of the bondholders and contained, among other things, the following:

"In order to protect the interest of the bondholders, the Trustee has taken possession of the property and will, if possible, purchase clear title for a nominal consideration, otherwise foreclosure proceedings will be necessary so that the building can be acquired and ultimate reorganization of this bond issue accomplished.

"To protect the interest of bondholders, this Committee has been formed. There will be no charge to the bondholders for services of the Committee, the fees of its attorneys or the services of the West Side Trust & Savings Bank of Chicago as Depositary.

"So that this Bondholders' Committee may serve and protect your interest, it is imperative that bonds be deposited promptly, accompanied by the enclosed letter of transmittal filled out and signed. Each depositor will receive in exchange for his bond, a depositary certificate."

When we come to examine the amended bill of complaint we find that this deposit agreement dated September 30, 1931, signed by the members of the committee named, is not attached, and therefore this court is unable to consider the terms of this agreement and whether it has any particular application to the amended bill of complaint of the plaintiff.

Various charges are made in this amended complaint, among which it is claimed that the bondholders' committee was guilty of violation of the terms of the agreement that was entered into for the benefit of the

bondholders. It further appears from the prayer of the complaint that the court may find that the bond-holders' protective committee was created for the purpose of carrying out a fraudulent scheme, and that they were and are disqualified to act, and due to the fact that they have concealed information from the bondholders, and to the malfeasance and misfeasance in office, they should be removed from office and their successors appointed or the entire agreement be declared fraudulent and void. And it further appears from the relief prayed that in the event the court finds that the deposit agreement is binding, then the court may declare the present members of the committee, or some of them, disqualified and removed from office. Therefore, it is important that this agreement that we have referred to should have been made a part of the amended complaint. As we have already noted in this opinion the defendants filed their motion to strike and to dismiss the amended complaint based on motions permitted by sections 45 and 48 of the Civil Practice Act, and the ground for these motions is specifically set forth in the motions.

The defendants call our attention to the fact that the amended complaint attempts to state many causes of action in one suit, namely, a cause of action on each of 44 bond issues. The defendants having filed separate motions to dismiss under section 48 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 172; Jones Ill. Stats. Ann. 104.048] on specific grounds as required by that section, and also having filed a motion under section 45 of the Practice Act to strike the amended complaint in its entirety, or to strike various portions or divisions, alleging reasons therefor, the sustaining by the trial court of all aforesaid motions struck each portion or division of the amended complaint.

The plaintiffs assert, by way of conclusions, violation of various duties by the bank as trustee in pos-

session and the committee, but nowhere do we find in the record the foundation instruments setting out what those duties were. The deposit agreement outlined the duties and obligations of the committee and of the depositors. The trust deed outlined the contract between the trustee and the bondholders and between the bondholders themselves. Therefore, it is contended that without the deposit agreement or trust deed being attached as exhibits and made a part of the amended complaint or pertinent provisions thereof set forth in the amended complaint, no court could determine whether the members of the committee or the bank as trustee had violated any of its duties, while the plaintiffs contend in reply to the suggestions regarding the failure to attach the deposit agreement to the amended bill, that it was attached to the original bill and made a part thereof and, therefore, it is still before the court notwithstanding the court sustained a motion to strike the bill of complaint. By failure of the plaintiffs to abstract the deposit agreement and the trust deeds that have been referred to in the agreement, the court does not have these instruments before it, and is therefore unable to properly consider them and what effect they would have on the questions involved in this litigation. The importance of these instruments being in the record is stated by the Supreme Court in the case of *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, where the court said:

"The controlling issue presented for decision is whether plaintiff's action in initiating the foreclosure proceeding warranted the findings quoted from the decree of June 5, 1936, and its removal as trustee. To determine this question a review of the pertinent provisions of the trust deed is essential since a trust itself constitutes the charter of the trustee's powers and duties. From it he derives the rule of his conduct, and it not only prescribes the extent and limit of his au-

thority but also furnishes the measure of his obligations.'' So from what was said by the Supreme Court, the only way in which this court could reach a conclusion as to the duties of the members of the bondholders' protective committee would be by examining the deposit agreement and consulting the trust deed providing for the duties of the trustee appointed by this document. And further, it is provided by section 36 of the Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, par. 160 [Jones Ill. Stats. Ann. 104.036]) as follows:

''(Exhibits.) Whenever an action, defense or counterclaim is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader shall attach to his pleading an affidavit stating facts showing that such instrument is not accessible to him. In pleading any written instrument a copy thereof may be attached to the pleading as an exhibit. In either case the exhibit shall constitute a part of the pleading for all purposes. No profert shall be necessary.''

Now when we come to consider the questions that have been called to our attention by the plaintiffs in regard to the Cullom Apartments, the Fantha and the Minisbee Apartments, certain charges are made in regard to the duties of the committee, as well as whether the trustee acted improperly in the disbursement of the funds. This would have to be determined from the terms of the trust deed, and not having the instrument before us we are unable to consider these questions. The same applies to the charges made in regard to the Sarose Apartments, the Fairfield Apartments, the Parkway Apartments, and the Phylis-Ruth Apartments.

The plaintiffs contend that the amended complaint was well pleaded and stated a cause of action entitling the plaintiffs the relief sought, and that the court erred

in dismissing the amended complaint for want of equity. While it is true that motions to dismiss admit the well-pleaded allegations to be true, still such allegations, of course, are to be considered by the court in the disposition of the points brought to the attention of the court.

The plaintiffs rely largely on the contention that the committee committed a fraud when it bid at the sales of the property involved in this litigation, under a foreclosure decree, at 10 cents on the dollar, and failed to pay the 10 cents.

When we come to consider the rights of nondepositors who have not joined with other depositors in the agreement entered into by these defendants for their benefit, of course nondepositors are not a party to this agreement, and therefore cannot complain of the bid that was made for the reason that the nondepositors would have had to be present at the sale and offer a bid, as would the nominee of the committee when the sale took place. This, according to the bill, the nondepositors failed to do, and further, it does not appear that they objected to the approval of the sale, or at any time took steps which would justify the suggestion made by them that this sale was a fraudulent one and therefore they were defrauded by the acts of this committee.

The plaintiffs criticize the motions that were made as being hypercritical and hypocritical and the sustaining of such pleadings nullified the effect of the Civil Practice Act, and suggest that the motion to dismiss under section 48 did not set forth grounds for dismissal. From an examination of the motion it seems to the court that there were several items mentioned therein as being specific grounds upon which the court would be justified in entering the order of dismissal. The plaintiffs contend that they having filed a reply to the motion to dismiss under section 48 denying the

allegations contained in the affidavit in support of the motion and in the absence of any evidence, the court was powerless to sustain this motion. Just what the objection to the procedure was does not appear to have been made by the plaintiffs at the time the court entered the motions.

It is argued that no evidence was heard by the court, and in the absence thereof the court could not predicate the dismissal on matters contained in the affidavit without evidence. Well, if the record on this point is not preserved by the plaintiffs they are not in a position to complain upon the grounds urged. We believe that the motion made as provided for by section 48 was specific, and that the court properly considered the motion when presented.

Then again, it is further urged by the plaintiffs that the motion to dismiss under section 45 was insufficient in law and should have been overruled, and if we consider the brief filed by the plaintiffs upon this point, it is said that a mere glance at the confusing and voluminous pleadings upon the motions to dismiss upon the 40 alleged grounds, motion to dismiss under section 48 and motion to dismiss under section 45 will be sufficient to convince the court that every effort was made to confuse and becloud the issues, and that the rules of practice and procedure were deliberately violated and grossly transgressed. It would appear to this court from this statement that the motions were sufficiently specific not to incite criticism of the plaintiffs.

The defendants contend that the amended complaint was insufficient in law and the defendants' motions to strike it in its entirety or various portions or divisions thereof and dismiss it under section 45 were properly sustained, and rely on the opinion of the court in *Hoff v. Heymann,* 295 Ill. App. 622, 15 N. E. (2d) 347 (Abst.). They contend that the criticism of the court

of the complaint in that case applies to the pending appeal since the allegation of the instant amended complaint are strikingly similar, and suggest that the amended complaint states that the plaintiffs are investors in gold bonds and subsequently state that certificates of deposit were issued to them. They do not state that they are present owners of certificates, nor do they state what bonds they invested in. The first 10 paragraphs and the first paragraph of paragraph 11 of the amended complaint are general and conclusions which might be applied to any bond issue. We agree with this statement.

When we examine the opinion in the case of *Hoff v. Heymann,* 295 Ill. App. 622 (Abst.), it is clear that the allegations contained in the petition filed by the plaintiffs in the instant case are similar and that many of the statements of fact are vague, and what the court said in that case applies here. The court said: "If we eliminate the conclusions of the pleader there is practically nothing left to the complaint. We have read the complaint not only as it appears in the abstract but also in the record. Stripped of bare conclusions it fails to give any information which would justify a decree as prayed." For the reasons stated we are of the opinion that the court was justified in striking the amended bill of complaint. To a like effect is the opinion in the case of *Dolan v. Morensky; Burnett v. Carey,* 294 Ill. App. 615 (Abst.).

Having considered the questions we regard as material we are of the opinion that the court did not err in striking the amended complaint, and, the plaintiffs having elected to stand by this amended complaint, that the court was justified in dismissing the action for want of equity. The judgment therefore is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.